IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARIANNE SAWICKI,<br><br>        *Plaintiff,*<br><br>v.<br><br>RICHARD A. WILSON, et al.,<br><br>        *Defendants.* | CIVIL ACTION<br>NO. 25-4884 |

**Pappert, J.**                                                                  **December 15, 2025**

## MEMORANDUM

    *Pro se* plaintiff Marianne Sawicki sues Richard Wilson, Christopher Wencker, Judge George Zanic, David Smith, Angela Robinson, Lori Heaton, Gloria Ammons and Shohin Vance, alleging they retaliated against her for exercising her First Amendment rights and conspired to deprive her rights under the First, Fifth and Fourteenth Amendments. She also accuses Ammons and Vance of depriving her of liberty and property without due process.

    But in doing so, Sawicki tries to relitigate matters already decided. In 2021, she sued all defendants but Ammons and Vance, claiming—like she does now—they engaged in a wide-ranging conspiracy to destroy her legal practice. Judge Wilson in the Middle District of Pennsylvania dismissed Sawicki's claims first without prejudice, *see Sawicki v. Kipphan* (*Sawicki I*), No. 21-CV-2031, 2023 WL 3061850, (M.D. Pa. Apr. 24, 2023), and then with prejudice, *see id.*, 2024 WL 197637 (M.D. Pa. Jan. 18, 2024). Sawicki appealed, and the Third Circuit affirmed. *See id.*, 2025 WL 1261780 (3d Cir. May 1, 2025).

1

All defendants move to dismiss Sawicki's Complaint. Claim preclusion and legal immunities bar her claims outright. And in any event her implausible and conclusory assertions fail to state claims upon which relief can be granted. The Court grants the motions and dismisses this case with prejudice.

I

Judge Wilson explained this case's history in her April of 2023 and January of 2024 opinions. *See generally Sawicki I*, 2023 WL 3061850; *id.*, 2024 WL 197637. Everything stems from Sawicki representing Barbara Kissinger. Police arrested Kissinger on charges of animal cruelty in September of 2019. *See* (Compl. ¶ 27, Dkt. No. 1). While Kissinger was incarcerated, the Borough of Huntingdon purportedly demolished her house without notice and filed a civil lien against her to recover the costs. *See* (*Id.* ¶¶ 27–29, 46). Sawicki, a solo civil rights lawyer in Huntingdon, defended Kissinger against the lien. (*Id.* ¶¶ 5, 25, 28, 36.) In November of 2019, Sawicki requested records related to the Borough's demolition of the house. (*Id.* ¶¶ 21, 24.) Sawicki believes her request alerted Borough Solicitor Richard Wilson about extensive costs the Borough would face if Sawicki succeeded, *see* (*Id.* ¶¶ 29–34), so he supposedly enlisted the other defendants to stop Sawicki, *see* (*Id.* ¶¶ 29–31, 212).

In November of 2019, Kissinger also retained Sawicki for her criminal case. (*Id.* ¶ 49.) Sawicki told Kissinger to skip her arraignment, and Sawicki appeared before Judge Zanic on Kissinger's behalf. *See* (*Id.* ¶¶ 57–58). Attorney Christopher Wencker, who thought he represented Kissinger, learned of Sawicki's actions, called Kissinger, along with Aging Care Manager Supervisor Lori Heaton, and instructed her to attend the arraignment or risk arrest. *See* (*Id.* ¶¶ 38–39, 56, 58.) Kissinger did so, but

District Attorney David Smith and Court of Common Pleas Judge George Zanic prevented Sawicki from speaking to Kissinger or explaining herself in open court. *See* (*Id.* ¶¶ 59–65.)

After that hearing, Judge Zanic and Wencker reported Sawicki to the Disciplinary Board of the Supreme Court of Pennsylvania. (*Id.* ¶¶ 66, 68, 71.) Disciplinary Counsel Gloria Ammons investigated their claims and interviewed Wilson, Wencker, Judge Zanic, Smith, Heaton and Court Administrator Angela Robinson—all of whom repeated alleged falsehoods about Sawicki. *See* (*Id.* ¶¶ 93–99). Sawicki sent Ammons a brief of her position along with 61 exhibits, (*Id.* ¶¶ 98–99), and Ammons filed a Petition for Discipline against Sawicki a month later, (*Id.* ¶ 114.)

Sawicki then sued Wilson, Wencker, Judge Zanic, Smith, Robinson, and Heaton[1] on December 5, 2021. *Sawicki I*, 2023 WL 3061850, at *4. Judge Wilson stayed the case pending the disciplinary proceedings. *See id.* Ammons prosecuted that case against Sawicki before a three-member Hearing Committee, allegedly relied on fabricated testimony, disparaged Sawicki, and misrepresented the record. *See* (Compl. ¶¶ 120–41). The Hearing Committee ultimately sided with Ammons and adopted her brief "verbatim." (*Id.* ¶ 142.) The Disciplinary Board adjudicated the claims against Sawicki on April 20, 2023, see (*Id.* ¶ 150), and Judge Wilson dismissed Sawicki's lawsuit four days later without prejudice, *see Sawicki I*, 2023 WL 3061850.

On September 15, Disciplinary Board member Shohin Vance submitted a purportedly fallacious report about Sawicki's disciplinary proceedings, *see* (*Id.* ¶¶ 155–

---

[1] Sawicki also sued attorney Michael Kipphan, Huntingdon-Bedford-Fulton Area Agency on Aging, the County of Huntingdon and the Borough of Huntingdon. (Wilson's Mot. Ex. "1," *Sawicki I* SAC at 1, Dkt. No. 22-2.)

56), which Sawicki petitioned the Supreme Court of Pennsylvania to overturn, *see* (*Id.* ¶ 165). The Court rejected her petition and suspended Sawicki's "long-retired law license" for a year and a day starting in January of 2024.[2] (*Id.* ¶¶ 165–67). Around that time, Judge Wilson dismissed Sawicki's second amended complaint with prejudice, *see Sawicki I*, 2024 WL 197637, and the Third Circuit affirmed that decision in May of 2025, *see id.*, 2025 WL 1261780.

## II

To avoid dismissal under Federal Rule of Civil Procedure 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads facts from which the Court can infer "that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Although this "plausibility standard is not akin to a 'probability requirement,'" it demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

Assessing plausibility under *Twombly* and *Iqbal* is a three-step process. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). Step one is to "take note of the elements the plaintiff must plead to state a claim." *Id.* (alterations omitted) (quoting *Iqbal*, 556 U.S. at 675). Next, the Court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 679). Finally, for all "well-pleaded factual

---

[2] The *Altoona Mirror* and *The Huntingdon Daily News* published details of Sawicki's discipline in December of 2023. (*Id.* ¶ 174.) Sawicki suspects Ammons or Vance had something to do with those stories. *See* (*Id.* ¶ 173).

allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (alteration in original) (quoting *Iqbal*, 556 U.S. at 679). If the well-pleaded facts do not nudge the "claims across the line from conceivable to plausible," the Court must dismiss the complaint. *Twombly*, 550 U.S. at 570.[3]

### III

Claim preclusion bars any claims against the *Sawicki I* defendants.[4] That doctrine precludes claims that were brought or could have been brought in a previous action. *In re Mullarkey*, 536 F.3d 215, 225 (3d Cir. 2008). Doing so "protect[s] litigants from the burden of relitigating an identical issue with the same party or his privy . . . and promot[es] judicial economy by preventing needless litigation." *Id.* (alteration in original) (quoting *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 327 (1979)).

Claim preclusion requires "(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action." *Davis v. Wells Fargo*, 824 F.3d 333, 341–42 (3d Cir. 2016) (citation omitted). The Third Circuit Court of Appeals takes a "broad view" when considering what constitutes the same cause of action and looks to the "essential similarity" between the underlying events giving rise to the legal claims. *Blunt v.*

---

[3]    Defendants attach to their motions Sawicki's second amended complaint in *Sawicki I*, Judge Wilson's decisions, the Third Circuit decision, and the Disciplinary Board's Report and Recommendation. *See* (Cnty. Defs.' Mot. Exs. "1"–"10," Dkt. Nos. 19-2–10); (Wilson's Mot. Exs. 1–6, Dkt. No. 2); (Jud. Defs.' Mot. Exs. A–C, Attachs. 1–4, Dkt. Nos. 25-2–8). Because those documents are "matters of public record," the Court will consider them. *See Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (citation omitted); *United States ex rel. Alejandro v. Phila. Vision Ctr.*, No. 20-2027, 2021 WL 22870, at *2 n.3 (E.D. Pa. Jan. 4, 2021) (considering documents filed in a prior case).

[4]    Because Sawicki did not sue Ammons and Vance in *Sawicki I*, claim preclusion does not apply to them.

5

*Lower Merion Sch. Dist.*, 767 F.3d 247, 277 (3d Cir. 2014) (citation omitted). A district court may grant a Rule 12(b)(6) motion based on an affirmative defense, such as claim preclusion, "if the predicate establishing the defense is apparent from the face of the complaint." *Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 n.10 (3d Cir. 1978).

The Third Circuit affirmed Judge Wilson's decision dismissing *Sawicki I* with prejudice, *see* 2025 WL 1261780, at *2,[5] which operates as a final judgment on the merits, *see Gombocz v. Yelencsics*, 468 F.2d 837, 840 (3d Cir. 1972); Fed. R. Civ. P. 41(b). Sawicki again sues Wilson, Wencker, Judge Zanic, Smith, Robinson and Heaton. *Compare* (Compl. at 1 (listing those defendants)) *with* (*Sawicki I* SAC at 1 (same)). And in both cases, Sawicki alleged the same causes of action, *compare* (Compl. at 28, 31) (First Amendment retaliation and conspiracy) *with* (*Sawicki I* SAC at 86, 89 (same)), seeking the same relief, *compare* (Compl. at 32) *with* (*Sawicki I* SAC at 89–90), and relying on a similar set of facts, *compare* (Compl. ¶¶ 195, 197–98, 212, 216–17) *with* (*Sawicki I* SAC ¶¶ 275–77, 289–90). The only difference is that the current Complaint adds Ammons and Vance, their purported interactions with the *Sawicki I* defendants, and Sawicki's one-year suspension. *See* (Compl. ¶¶ 93, 95, 104–171). But those allegations all bear an essential similarity to her prior claims: The *Sawicki I* defendants retaliated against her for speaking up and conspired to punish her for doing so.

To the extent the claims differ, Sawicki could have brought them in *Sawicki I*. *Blunt*, 767 F.3d at 277. Sawicki filed a second amended complaint in her prior action on May 31, 2023. *See Sawicki I*, 2024 WL 197637, at *5. By that time, the disciplinary proceedings had ended, *see* (Compl. ¶¶ 113–49), and the Disciplinary Board had

---

[5]      Sawicki never filed a petition for a writ of *certiorari*.

adjudicated the claims against Sawicki, *see* (*Id.* ¶ 150). Sawicki's new allegations largely concern actions by Ammons and Vance after May 31—not the *Sawicki I* defendants. (*Id.* ¶¶ 150–80). Although Sawicki believes the *Sawicki I* defendants must have plotted with Ammons and Vance, *see* (*Id.* ¶¶ 104–49, 153–55, 162–64), those conclusory and implausible allegations do not "raise a right to relief above the speculative level," *see Twombly*, 550 U.S. at 545.[6]

## IV

Even if Sawicki's claims are not precluded, the defendants are all immune from suit. *See* 5B *Wright & Miller's Federal Procedure &* Practice § 1357 (4th ed. 2025) (stating that legal immunities can serve as a basis for a Rule 12(b)(6) motion); *see also Wilson v. Rackmill*, 878 F.2d 772, 776 (3d Cir. 1989) (citations omitted) (absolute immunity); *Capogrosso v. Sup. Ct. of N.J.*, 588 F.3d 180, 185 (3d Cir. 2009) (quasi-judicial immunity); *Washam v. Stesis*, 321 F. App'x 104, 106 (3d Cir. 2009) (prosecutorial and judicial immunity).

### A

Judicial immunity bars Sawicki's individual-capacity claims against Judge Zanic for presiding over Kissinger's case and reporting her to the Disciplinary Board. Judges have absolute immunity for judicial acts not taken in the "clear absence of all jurisdiction." *See Stump v. Sparkman*, 435 U.S. 349, 355–56 (1978); *Figueroa v. Blackburn*, 208 F.3d 435, 444 (3d Cir. 2000) (noting that immunity attaches so long as the court "has some subject matter jurisdiction" (citation omitted)). An act is judicial if

---

[6] Several defendants also argue that issue preclusion and the statute of limitations apply. *See* (Cnty. Defs.' Mem. of L. at 13–14, 16–19, Dkt. No. 20); (Wilson's Mem. of L. in Supp. at 13–14, Dkt. No. 22). The Court need not address those arguments because other grounds warrant dismissal.

7

it is "a function normally performed by a judge" and the parties "dealt with the judge in his judicial capacity." *Figueroa*, 208 F.3d at 443 (citation omitted).

Judge Zanic had jurisdiction over Kissinger's criminal proceedings, *see* 42 Pa. Stat. & Cons. Stat. Ann. § 931(a), and performed judicial acts by presiding over those proceedings and filing a complaint with the Disciplinary Board. Judge Zanic had an "obligation" to "report[] [Sawicki's] suspected violation to the appropriate authority." *See* Model Rules of Pro. Conduct r. 2.15 cmts. 1 & 2 (A.B.A. 2020); *id.* r. 2.15(B) & (D) (providing that a judge with knowledge that a lawyer has committed an ethical violation "shall inform the appropriate authority" and "take appropriate action"); *see also Herring v. Gorbey*, No. 17-278, 2017 WL 5885668, at *4–*5 (E.D. Pa. Nov. 27, 2017) (finding that a judge performed judicial acts by reporting the plaintiff's suspected misconduct). And because judges must feel free to act without fear of incurring personal liability for their actions in court, judicial immunity protects Judge Zanic even if his actions are alleged to be legally incorrect, in bad faith, malicious, or corrupt, *see Mireles v. Waco*, 502 U.S. 9, 11–12 (1991), or are taken as a result of a conspiracy with others, *see Dennis v. Sparks*, 449 U.S. 24, 27 (1980).[7]

B

Quasi-judicial immunity bars suits against persons "who perform functions closely associated with the judicial process," *Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985), and thus prevents Sawicki from bringing individual-capacity claims against Robinson as court administrator, Ammons and Vance as Disciplinary Board member

---

[7]     Judge Zanic also enjoys judicial immunity with respect to Sawicki's request for equitable relief because she never plausibly alleges that he violated a declaratory decree or declaratory relief was unavailable. *See Azubuko v. Royal*, 443 F.3d 302, 304 (3d Cir. 2006) (citing 42 U.S.C. § 1983); *Rush v. Wiseman*, No. 09-4385, 2010 WL 1705299, at *10–*11 (E.D. Pa. Apr. 27, 2010).

8

and counsel, and Wencker, Judge Zanic and Robinson as witnesses in the disciplinary proceedings.

Persons who act on behalf of a judicial official are entitled to quasi-judicial immunity for their acts. *See Gallas v. Sup. Ct. of Pa.*, 211 F.3d 760, 772–73 (3d Cir. 2000). Sawicki alleges Robinson along with Judge Zanic received and refused her request to make an oral motion to meet with Kissinger. *See* (Compl. ¶¶ 35, 37); *Gallas*, 211 F.3d at 772–73 (holding a court administrator immune for providing a judicial order to a newspaper); *Marcedes v. Barrett*, 453 F.2d 391, 392 (3d Cir. 1971) (per curiam) (finding a clerk of courts and administrative assistant receive quasi-judicial immunity).

Disciplinary proceedings are "judicial in nature," *see Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 433 (1982), and so quasi-judicial immunity protects Ammons and Vance as member and counsel of the Disciplinary Board, *see Capogrosso*, 588 F.3d at 184-85 (3d Cir. 2009) (holding that judicial disciplinary counsel are entitled to quasi-judicial immunity); *Murphy v. Off. of Disciplinary Couns.*, No. 17-1239, 2019 WL 4752059, at *18 (E.D. Pa. Sep. 30, 2019) (applying quasi-judicial immunity to members and counsel of the Disciplinary Board); *Vu v. City of Philadelphia*, No. 10-953, 2012 WL 1222628, at *8 (E.D. Pa. Apr. 11, 2012) (same); *Haagensen v. Sup. Ct. of Pa.*, 651 F. Supp. 2d 422, 433 (W.D. Pa. 2009) (same); *Frankel v. Disciplinary Bd. of Sup. Ct. of Pa.*, No. 05-CV-1450, 2005 WL 2994354, at *2 (E.D. Pa. Nov. 8, 2005) (same).[8]

---

[8] Pennsylvania Rule of Disciplinary Enforcement 209(b) immunizes members of the Disciplinary Board and Disciplinary Counsel for conduct in the course of their official duties. Pa. R.D.E. 209(b); *see also O'Brien v. Beatty*, 329 A.3d 685, 689–90 (Pa. Super. Ct. 2024) (dismissing claims against Disciplinary Counsel with prejudice).

And witnesses receive quasi-judicial immunity because their participation in the "trial process . . . is equally indispensable." *Russell v. Richardson*, 905 F.3d 239, 247–48 (3d Cir. 2018) (quoting *Briscoe v. LaHue*, 460 U.S. 325, 345–46 (1983)). Sawicki alleges that Robinson, Judge Zanic and Wencker testified falsely before the Hearing Committee, *see* (Compl. ¶¶ 121–23, 148), but "a trial witness has absolute immunity with respect to *any* [§ 1983] claim based on the witness' testimony," *see Rehlberg v. Paulk*, 566 U.S. 356, 367 (2012).[9]

C

Prosecutorial immunity bars Sawicki's individual-capacity claims against Smith for his conduct in Kissinger's criminal prosecution and Ammons for her conduct in Sawicki's disciplinary proceedings. "[A] state prosecuting attorney who acted within the scope of his duties in initiating and pursuing a criminal prosecution" is entitled to absolute immunity. *Imbler v. Pachtman*, 424 U.S. 409, 410 (1976). That protection includes state prosecutors before the Disciplinary Board. *See Haagensen*, 651 F. Supp. 2d at 434; *see also Kwasnik v. LeBlon*, 228 F. App'x 238, 244 (3d Cir. 2007) (finding that prosecutorial immunity precluded suit against disciplinary committee members); *Wager v. York Cnty. Domestic Rels.*, No. 09-CV-1073, 2010 WL 231129, at *9 (M.D. Pa. Jan. 14, 2010) (same).

Smith and Ammons are also immune from allegations concerning their investigation of Kissinger or Sawicki. *See* (Compl. ¶¶ 91–112); *Butz v. Economou*, 438 U.S. 478, 516 ("[T]hose officials who are responsible for the decision to initiate or

---

[9] Pennsylvania Rule of Disciplinary Enforcement 209(b) also provides immunity for "[a]ll communications" to the Disciplinary Board, hearing committee, or disciplinary counsel and for "all testimony" against a respondent-attorney. Pa. R.D.E. 209(b); *but see, e.g.*, *Post v. Mendel*, 507 A.2d 351, 355 (Pa. 1986) (finding no immunity for sending a letter to the Disciplinary Board).

10

continue a proceeding . . . are entitled to absolute immunity from damages liability for their parts in that decision."); *Rose v. Bartle*, 871 F.2d 331, 343–47 (3d Cir. 1989) (applying prosecutorial immunity to prosecutors who "solicited and prepared perjured testimony by witnesses," acted in their "investigative capacity," and performed "investigatory interviews"); *Gagliardi v. Lee*, 154 F. App'x 317, 319 (3d Cir. 2005) (similar).

D

Sovereign immunity requires dismissal of Sawicki's official-capacity claims. Under the Eleventh Amendment and broader notions of sovereign immunity, states are immune from private suits without their consent. U.S. Const. amend. XI; *Hans v. Louisiana*, 134 U.S. 1 (1890); 13 *Wright & Miller's Federal Practice & Procedure* § 3524.1 (3d ed. 2025). Official-capacity suits against state officials are not suits against the official but rather "a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Such immunity "is a jurisdictional bar which deprives federal courts of subject matter jurisdiction." *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 693 n.2 (3d Cir. 1996).[10] Moreover, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will*, 491 U.S. at 71.

V

Finally, even in the absence of all of the above, Sawicki fails to state claims upon which relief can be granted. She first alleges that all defendants retaliated against her

---

[10] Nor does any exception to sovereign immunity apply because Congress did not abrogate sovereign immunity with § 1983, *see Downey v. Pa. Dep't of Corrs.*, 968 F.3d 299, 310 (3d Cir. 2010), Pennsylvania has not waived sovereign immunity, *see* Pa. Cons. & Stat. Ann. § 8521(b); *Laskaris v. Thornburgh*, 661 F.2d 23, 25 (3d Cir. 1981), and Sawicki does not allege an ongoing violation of federal law, *see Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002).

for requesting public documents and exposing state-sponsored misconduct. *See* (Compl. ¶¶ 195–96). To plead a First Amendment retaliation claim, Sawicki must plausibly allege "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Independence Township*, 463 F.3d 285, 296 (3d Cir. 2006).

Sawicki fails to satisfy the second and third elements. Her claims turn on the defendants purportedly triggering a state bar investigation that ultimately led to her suspension. (Compl. ¶¶ 195–98). But "[w]hen a public official is sued for allegedly causing a third party to take some adverse action against a plaintiff's speech, . . . [the] defendant's conduct must be of a particularly virulent character." *McLaughlin v. Watson*, 271 F.3d 566, 573 (3d Cir. 2001).[11] Sawicki's allegations about the defendants criticizing her or urging her suspension aren't enough. She must plausibly allege they "threaten[ed] or coerce[d]" the Disciplinary Board or Supreme Court of Pennsylvania to act. *Id.* (citation modified). Without threats or coercion, "such speech does not adversely affect [Sawicki's] First Amendment rights even if defamatory." *Id.* (citation modified). None of Sawicki's nonconclusory allegations suggest that any defendant threated or coerced anyone.

Even if Sawicki's discipline was retaliatory, she never plausibly alleges her request for public documents was the "but-for" cause of that retaliatory conduct. *Mirabella v. Villard*, 853 F.3d 641, 651 (3d Cir. 2017). Judge Zanic called the

---

[11] Sawicki insists *McLaughlin* does not apply to defamatory statements. *See* (Pl.'s Resp. in Opp'n at 17–19, Dkt. No. 23). She is incorrect. *McLaughlin*, 271 F.3d at 573 (citing *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 687 (4th Cir. 2000)).

Disciplinary Board the day Sawicki tried to represent Kissinger at her arraignment, not the day Sawicki requested public documents related to the lien. *See* (Compl. ¶¶ 21, 35, 45, 66). And Sawicki conclusorily asserts "on information and belief" that the defendants conferred with each other during her disciplinary proceedings, *see* (Compl. ¶¶ 132, 153), that Ammons "acced[ed] to the wishes of Judge Zanic" when drafting Sawicki's petition for discipline, *see* (*Id.* ¶ 113), and that Vance and Ammons agreed to deceive the Supreme Court of Pennsylvania, *see* (*Id.* ¶ 154).

Sawicki next alleges that Ammons and Vance deprived her of property and liberty without due process of law. Sawicki cannot use a federal district court to appeal a state Supreme Court's disciplinary adjudication. *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462, 486–87 (1983). She contends that Ammons and Vance misrepresented the evidentiary record, deceived the Supreme Court of Pennsylvania, relied on false accounts, and thus subverted the disciplinary process. *See* (Compl. ¶¶ 201–03). "But that assertion is just her retaliation theory repackaged. So it too crashes into *McLaughlin*'s bar." *Sawicki I*, 2025 WL 1261780, at *2.[12]

And because Sawicki has not plausibly alleged a violation of her constitutional rights, she does not state a claim for conspiracy to violate those rights. *See Black v. Montgomery County*, 835 F.3d 358, 372 n.14 (3d Cir. 2016).

---

[12] To the extent that Sawicki alleges a procedural due process claim, that also fails because Sawicki repeatedly had meaningful opportunities to be heard. *See* (Compl. ¶¶ 125–26, 141, 143, 165); *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 795 (1983). And though Sawicki complains that Ammons and Vance hurt her reputation through defamatory statements, "reputation alone is not an interest protected by the Due Process Clause," *see Versarge v. Township of Clinton*, 984 F.2d 1359, 1371 (3d Cir. 1993).

VI

A party may amend a pleading with "the court's leave," Fed. R. Civ. P. 15(a)(2), but courts may deny leave when the proposed "amendment would be futile," *Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 210 (3d Cir. 2019) (citation omitted). Although Sawicki seeks leave to amend, doing so would be futile because she cannot overcome claim preclusion and the immunities that bar her claims. *See U.S. ex rel. Atkinson v. PA. Shipbuilding Co.*, 473 F.3d 506, 516 (3d Cir. 2007) ("Repleading is futile when the dismissal was . . . based on some legal barrier other than want of specificity or particularity.").

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
Gerald J. Pappert, J.