## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MARIANNE SAWICKI,

      *Plaintiff,*

   v.

RICHARD A. WILSON, et al.,

      *Defendants.*

CIVIL ACTION
NO. 25-4884

Pappert, J.                                   June 25, 2026

### MEMORANDUM

*Pro se* plaintiff and former attorney Marianne Sawicki lost her frivolous civil rights suit against numerous local officials in Huntingdon County. One of those officials, Solicitor Richard Wilson, moved for attorney's fees and costs under 42 U.S.C. § 1988. The Court granted the motion and ordered Wilson to file the appropriate fee petition, pursuant to which he now seeks $9,633.00 in attorney's fees. The Court grants the petition in part and orders Sawicki to pay Wilson $9,101.00.[1]

I

In September of 2025, Glatfelter Claims Management retained Fred Buck to represent Wilson in this lawsuit. *See* (Pet. at 5, Dkt. No. 43); (Decl. of Buck ¶ 5, Pet. Ex. B, Dkt. No. 43). Buck is a partner at Rawle & Henderson, LLP and has practiced law in Pennsylvania for forty-six years. (Decl. of Buck ¶¶ 1, 4.) He graduated from Georgetown University in 1974 and Temple University School of Law in 1980. (*Id.*

---

[1]     Sawicki claims the Court cannot award attorney's fees before the Supreme Court of the United States weighs on her petition for a writ of *certiorari*, which she has not yet filed. The Court already rejected this argument. *Sawicki II*, 2026 WL 1799231, at *1 (E.D. Pa. June 23, 2026).

¶¶ 2–3.)  He has tried seventy-one cases in state and federal court and has experience defending against civil rights cases, including Sawicki's prior lawsuit against Wilson in the Middle District of Pennsylvania.  (*Id.* ¶¶ 3–4.)

Buck charged Glatfelter $190.00 per hour—a rate well below what he or attorneys with similar experience typically charge.  *See* (*Id.* ¶¶ 5–6); (Decl. of Sheryl Brown ¶¶ 3–5, Pet. Ex. C, Dkt. No. 43).  Before Sawicki's appeal,[2] he billed 50.7 hours, *see* (Buck's Invoices at 11, 15, 17, 21, Pet. Ex. A, Dkt. No. 43), which included:

- Reviewing and researching the Complaint and materials from *Sawicki I*;

- Discussing various filings with Wilson;

- Exchanging emails and discussing the case with Glatfelter, "Ms. Hartline" and "Ms. Gehly";

- Exchanging emails and discussing case strategy with Marylou Maierhofer and Sonya Kivisto, the attorneys for Wilson's codefendants[3];

- Preparing his entry of appearance and executing the waiver of service;

- Researching, drafting and revising the motion to dismiss and reply; and

- Reviewing the parties' submissions and the Court's rulings.

*See generally* (*Id.*); (Wilson's Reply Brief, at 3–6, Dkt. No. 46).  His fees were $9,633.00 from September to December of 2025.  *See* (Pet. at 5).

---

[2]    The Third Circuit Court of Appeals awarded Wilson attorney's fees for Sawicki's appeal.  *See* Apr. 7, 2026 Ord., *Sawicki v. Wilson*, No. 25-3581, Dkt. No. 33.

[3]    Maierhofer represented Christopher Wencker, David Smith, and Lori Heaton, and Kivisto represented Judge George Zanic, Angela Robinson, Gloria Ammons, and Shohin Vance. *Sawicki v. Wilson* (*Sawicki II*), No. 25-4884, 2025 WL 3637995 at *1 (E.D. Pa. Dec. 15, 2025).

II

The starting point for calculating attorney's fees is the "lodestar" method, which is the product of the "number of hours reasonably expended on the litigation" and "a reasonable hourly rate." *McKenna v. City of Philadelphia*, 582 F.3d 447, 455 (3d Cir. 2009) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).  The party moving for attorney's fees bears the burden to show that his rates and hours are reasonable by submitting "evidence supporting the hours worked and the rates claimed." *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 703 n.5 (3d Cir. 2005) (*Hensley*, 461 U.S. at 433).  The lodestar carries a "strong presumption" of reasonableness and "includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee." *Souryavong v. Lackawanna County*, 872 F.3d 122, 128 (3d Cir. 2017) (quoting *Perdue v. Kenney A. ex rel. Winn*, 559 U.S. 542, 546, 553 (2010)).

After making this showing, "the burden shifts to [Sawicki] to challenge the attorney's hours, hourly rate, and the reasonableness of the product of those numbers." *Dee v. Borough of Dunmore*, 548 F. App'x 58, 60 (3d Cir. 2013).  The Court "may deviate from [the lodestar], but only in the 'rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee.'" *Souryavong*, 872 F.3d at 128 (quoting *Perdue*, 559 U.S. at 543–44).

III

A

Reasonable hourly rates are calculated in accordance with prevailing market rates in the relevant community. *Blum v. Stenson*, 465 U.S. 886, 896 (1984).  Courts determine that rate based on "the experience and skill of the attorneys" compared to

the rates of "comparable lawyers in the private business sphere." *Student Pub. Int. Rsch. Grp. of N.J., Inc. v. AT & T Bell Lab'ys*, 842 F.2d 1436, 1447 (3d Cir. 1988). The Third Circuit Court of Appeals "has approvingly cited" the fee schedule established by Community Legal Services, Inc., and courts in this district have found it is "a fair reflection of the prevailing market rates in Philadelphia." *Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001) (citation modified and omitted).

Buck's rate of $190.00 per hour is reasonable. He has practiced law for forty-six years, graduated from Georgetown and Temple Law, tried seventy-one cases in state and federal court, and is a partner at Rawle & Henderson. (Decl. of Buck ¶¶ 1–4.) As of January of 2023, attorneys with over twenty-five years of experience in the Philadelphia area can bill between $735.00 and $850.00 per hour, (*id.* ¶ 6); (CLS Att'y Fees, Pet. Ex. D, Dkt. No. 43), and he charged well below that rate. Sawicki provides no evidence to suggest otherwise.

B

After determining the reasonable rate, the Court "review[s] the time charged, decide[s] whether the hours set out were reasonably expended for each of the particular purposes described and then exclude[s] those that are 'excessive, redundant, or otherwise unnecessary.'" *Pub. Int. Resch. Grp. of N.J., Inc. v. Windall*, 51 F.3d 1179, 1188 (3d Cir. 1995) (quoting *Hensley*, 461 U.S. at 433). This analysis "go[es] line, by line, by line through the billing records supporting the fee request." *Evans v. Port Auth. of N.Y. & N.J.*, 273 F.3d 346, 362 (3d Cir. 2001) (citation modified).

4

1

Buck billed 50.7 hours for his work from September 3, 2025 to December 16, 2025.  (Buck's Invoices at 11, 15, 17, 21.)  Sawicki first challenges the invoices in their entirety because they purportedly do not verify his work.  *See* (Pl.'s Resp. in Opp'n at 2–3, Dkt. No. 44).  She says his declaration "neglects to inform the Court that [Buck] worked for Mr. Wilson, what work he may have done, or when and how long he did it." (*Id.* at 3.)  Because Buck never "attest[ed] to the work he did," he allegedly cannot recover.  (*Id.*)

Sawicki is wrong.  Buck signed the petition under Rule 11(b) and attached the corresponding invoices.  By doing so, Buck certified "to the best of his knowledge, information and belief . . . the factual contentions [in the invoices] have evidentiary support."  Fed. R. Civ. P. 11(b)(3); *see also Young v. Smith*, 905 F.3d 229, 235 (3d Cir. 2018) ("[Rule] 11 requires attorneys to be careful and scrupulously honest in their filings and representations to the court.").  That alone suffices and, regardless, Buck submitted a supplemental declaration that "[t]he copies of legal bills attached to [the] fee petition as Exhibit 'A' are the true, correct and authentic legal bills generated" for his work "from September 3, 2025 . . . to December 16, 2026."  (Suppl. Dec. of Buck ¶ 1, Wilson's Reply Ex. "A," Dkt. No. 46.)  He confirmed that he "performed the work reflected in the bills and declare[d] based on personal knowledge that the work was performed within the times and billed at the rates reflected in the bills."  (*Id.* ¶ 2.)

2

Of the 50.7 hours billed, Buck spent 6.2 hours analyzing the Complaint, discussing various filings with Wilson, researching the possibility of transferring the

5

case to the Middle District of Pennsylvania, and reviewing the parties' submissions and the Court's rulings, *see generally* (*id.*), to which Sawicki never objected.[4]  After scrutinizing the corresponding line items, the Court concludes the 6.2 hours billed are reasonable.  *Lab'y Charter Sch. v AM*, No. 25-2524, 2026 WL 591550, at *5–6 (E.D. Pa. Mar. 3, 2026) (finding reasonable hours based on a "detailed billing statement" that included intaking the case, reviewing related documents, and litigating before the district court); *McGuffey v. Brink's, Inc.*, 598 F. Supp. 2d 659, 671 (E.D. Pa. 2008) (finding "miscellaneous research, telephone conversations, and conferences concerning facts, evidence, and witnesses: 1.3 hours" to be adequately specific).

With respect to the remaining 44.5 hours, Sawicki raises four objections and alleges "[t]he invoices cover work far beyond the provision of legal defense for Mr. Wilson."  (Pl.'s Resp. in Opp'n at 3.)

a

Sawicki contends the "[t]ime spent negotiating with the insurance carrier does not count."  (*Id.* at 3.)  She cites billing entries related to communications with Glatfelter, "Ms. Hartline" and "Ms. Gehly," *see* (*id.*), which amount to 1.9 hours,[5] *see* (Buck's Invoices at 9–11, 14, 16–17, 19).

---

[4]    The 6.2 hours include: 0.2 hours on September 3; 0.7 hours on September 4; 0.8 hours on September 8; 0.2 hours on September 15; 0.4 hours on October 15; 0.1 hours on October 20; 0.4 hours on October 27; 0.1 hours on October 29; 0.5 hours on October 30; 1.0 hours on November 3; 0.3 hours on November 7; 0.2 hours on November 20; 0.4 hours on November 24; 0.4 hours on December 1; 0.1 hours on December 4; and 0.4 hours on December 16.  (Buck's Invoices at 9–11, 13–14, 16–17, 19–20.)

[5]    Sawicki forgets to list 0.2 hours involving Gehly on December 16, 2025, *see* (Pl.'s Resp. in Opp'n at 3); (Buck's Invoices at 20), and the Court construes that entry as part of her objection.

Buck's communications with Glatfelter were reasonable because they concerned Sawicki's "new complaint." (*Id.* at 9.) Glatfelter retained Buck to represent Wilson, and his emails informed Glatfelter about his representation. *See* (Decl. of Buck ¶ 5); Model Rules of Pro. Conduct r. 1.4(a)(3) (A.B.A. 2020) ("A lawyer shall keep the client reasonably informed about the status of the matter."). But the entries for Hartline and Gehly are not "detailed with sufficient specificity." *See Helis v. BMW of N. Am., LLC*, 49 F.4th 371, 379 (3d Cir. 2022) (citation omitted). Wilson provides no information on who those individuals are, much less their connection to the case. Although they appear to be associated with Glatfelter, *see* (Wilson's Reply at 4), Wilson never submits "satisfactory evidence" proving as much, *see Maldonado*, 256 F.3d at 184; *Hensley*, 461 U.S. at 433 ("Where the documentation of hours is inadequate, the district court may reduce the award accordingly."). So the Court excludes the 1.7 hours related to Hartline and Gehly.[6]

b

Sawicki next takes issue with twenty-four entries totaling 5.4 hours related to Maierhofer, who was counsel for several codefendants.[7] *See* (Pl.'s Resp. in Opp'n at 4). She argues "[t]ime spent mentoring Ms. Maierhofer" does not count as time expended on Wilson's defense. *See* (*Id.*).

Again, Sawicki is incorrect. As Wilson points out, Buck and Maierhofer "represent[ed] defendants with similar interests and legal defenses" and "engaged in

---

[6]     Those entries are from September 3, 4, 9, 10 and 25; October 28, November 3 and 5; and December 1 and 16. (Buck's Invoices at 9–11, 14, 16–17, 19–20.)

[7]     Sawicki does not include 0.2 hours related to communications with codefendants' counsel from September 30, 2025, *see* (Pl.'s Resp. in Opp'n at 3); (Buck's Invoices at 11), which the Court considers as part of her objection.

7

the not uncommon practice of conferring about issues, defenses, and strategies for the mutual benefit of their clients." (Wilson's Reply at 3.)  His entries confirm:

- He had telephone discussions with Maierhofer "regarding new complaint" and "issues raised" by Sawicki.  (Buck's Invoices at 9–10.)

- He received and reviewed emails from Maierhofer "regarding entries of appearance."  (*Id.* at 10.)

- He exchanged emails with Maierhofer "regarding status of case," "strategy for motions to dismiss," and "addressing retaliation issue." (*Id.* at 10–11, 13–14.)

- He had discussions with Maierhofer "regarding Sawicki response" to the motions, the "reply to Sawicki response," her sur-reply brief, and dismissal of the case.  (*Id.* at 14, 16, 19–20.)

None of that work was excessive, redundant or unnecessary.  *Windall*, 51 F.3d at 1188.

Sawicki believes the invoices "contain too little information" because they don't show "who phoned whom on any given day," *see* (Pl.'s Resp. in Opp'n at 4), but Buck's submissions dispel that assertion.  They provide "fairly definite information as to the hours devoted to various general activities . . . and the hours spent by various classes of attorneys."  *Keenan v. City of Philadelphia*, 983 F.2d 459, 473 (3d Cir. 1992).  The information is "specific enough to allow the district court to determine [that] the hours claimed [were] reasonable for the work performed."  *Rode v. Dellarciprete*, 892 F.2d 1177, 1190 (3d Cir. 1990) (citation modified and omitted).

Sawicki suspects that Buck "effectively advised, guided, and mentored Ms. Maierhofer" in drafting her briefs because he "occasionally phone[d] [her] by mistake." (*Id.* at 4 & n.1.)  That inference is implausible.  Mistakenly calling Sawicki instead of Maierhofer reveals nothing about Buck's relationship with Maierhofer, let alone her briefing in this case.  Buck verifies he accidentally dialed Sawicki once in three years,

8

but "nothing [was] discussed in that brief conversation that would allow Ms. Sawicki to represent . . . that Mr. Buck was assisting Ms. Maierhofer in preparing her motions." *See* (Wilson's Reply at 3 n.2).

c

Sawicki also insists that Buck billed for "[t]ime spent speculating about what other parties might do." (Pl.'s Resp. in Opp'n at 5.) She specifically objects to three entries: (1) 0.2 hours on September 30 spent "ponder[ing] several of the routine docketing papers," (2) 0.4 hours on November 5 and 6 purportedly considering a sur-sur-reply and (3) 0.3 hours on December 4 "ruminat[ing]" about why several codefendants never filed a reply brief. *See* (*Id.*).

Although Sawicki mischaracterizes the invoices, she is correct about (1) and (3). First, Buck billed 0.2 hours for "[r]eceive[ing] and review[ing] waiver of service forms and entries of appearance for [the] Judicial defendants." (Buck's Invoices at 11.) The costs of clerical work "are ordinarily considered to be a part of an attorney's rate as office overhead" and "will not be compensated." *Sheffer v. Experian Info. Sol'ns, Inc.*, 290 F. Supp. 2d 538, 549 (E.D. Pa. 2003); *see also Halderman v. Pennhurst State Sch. & Hosp.*, 49 F.3d 939, 942 (3d Cir. 1995) ("[W]hen a lawyer spends time on tasks that are easily delegable to non-professional assistance, legal service rates are not applicable."). Indeed, courts have declined to award fees related to waivers of service because that work is "administrative in nature." *See Pa. State Lodge Fraternal Ord. of Police v. Township of Springfield*, No. 23-332, 2024 WL 1219960, at *5 (E.D. Pa. Mar. 21, 2024) (collecting cases).

Second, Buck billed 0.3 hours for "review[ing] [the Court's] procedures and docket entries" and emailing Maierhofer regarding the "status of [the] judicial defendants' reply brief." (*Id.* at 19.)  The status of the judicial defendants' reply brief—which they never filed—is unrelated to Buck's work for Wilson.  Because that work was unnecessary, the Court excludes it.

But Sawicki is incorrect about (2).  Nothing suggests Buck considered filing a sur-sur-reply.  Sawicki asked all defendants if she could file a sur-reply, and they responded on November 6 without objection.  (Pl.'s Unopposed Mot. for Leave ¶ 18, Dkt. No. 27.)  Buck's entries on November 5 and 6 correspond to her request—not his intention to somehow file another reply.  *See* (Buck's Invoices at 17).  She cannot now complain about him billing for work that she created.

d

Sawicki lastly accuses Buck of "inflat[ing]" his invoices with work "that was unnecessary or incompetently done."[8]  (Pl.'s Resp. in Opp'n at 6.)  She contends Buck could not have billed for the waiver of service because he didn't prepare that document, and his supposedly poor work product was not commensurate with the time he billed. *See* (*Id.* at 6–7).  She believes the motion and reply could not have taken Buck long given their "scanty" length, few citations and many "factual errors."  (*Id.*)

---

[8]    Sawicki's attempts to demean Buck are unfortunate, especially for a former attorney.  *See* 204 Pa. Stat. & Cons. Stat. Ann. § 99.3 ("A lawyer should abstain from making disparaging personal remarks or engaging in acrimonious speech or conduct toward opposing counsel . . . .").  The Court has granted both of his motions, while her filings have been largely frivolous and incomprehensible.

10

The 0.6 hours billed for the waivers of service will be excluded,[9] but not for the reason Sawicki proposes.  Buck "executed [the] waiver of service form," exchanged emails with Wilson regarding that form, and "filed and served" it on his behalf.  (Buck's Invoices at 10 (citation modified).)  Such administrative work cannot be awarded for reasons already explained.  *See supra* subsection III.A.2.c.

As for Buck purportedly inflating his hours, Sawicki's objections are meritless. He spent 27.0 and 8.7 hours on the motion to dismiss and reply respectively, which included researching, drafting and revising.[10]  *See* (Buck's Invoices at 10–11, 13–14, 16–17).  The motion and accompanying brief were eighteen pages, *see* (Dkt. No. 22), and the reply was nine pages, *see* (Dkt. No. 26).  Considering the case's procedural history and the motion's ultimate success, Buck spent a reasonable amount of time working on the motion and reply.  *See Maldonado*, 256 F.3d at 185–87 (finding three pages per hour reasonable); *Walton v. Massanari*, 177 F. Supp. 2d 359, 364 (E.D. Pa. 2001) (same for two pages per hour); *see also Stein v. Foamex Int'l, Inc.*, 204 F.R.D. 270, 272 (E.D. Pa. 2001) ("[I]t is often the case that it takes more time to create a document that it would take simply to type or dictate it.").

---

[9]    This reduction accounts for the 0.1 hours the Court already excluded with respect to Buck's communications with Gehly.  *See supra* subsection III.A.2.a.

[10]    These figures do not include entries related to Gehly, Hartline, Maierhofer, or the sur-reply. *See supra* subsections III.A.2.a–c.

The 27.0 hours on the motion to dismiss entails: 0.3 hours on September 11; 2.4 hours on September 25; 0.8 hours on September 27; 0.8 hours on September 29; 1.1 hours on September 30; 2.6 hours on October 1; 0.5 hours on October 2; 0.3 hours on October 3; 1.4 hours on October 5; 1.2 hours on October 6; 0.9 hours on October 10; 0.6 hours on October 12; 1.3 hours on October 14; 1.4 hours on October 15; 0.3 hours on October 20; 0.8 hours on October 22; 0.8 hours on October 24; 2.3 hours on October 26; 4.5 hours on October 27; and 1.0 hours on October 28.  (Buck's Invoices at 10–11, 13–14.)

The 8.7 hours on the reply consists of 4.6 hours on November 3 and 4.1 hours on November 4. (*Id.* at 16.)

11

Sawicki also speculates, without any factual support, that Buck helped Maierhofer draft her motion, and his entries should have distinguished his work for her clients. *See* (Pl.'s Resp. in Opp'n at 6–7). That objection has no basis. *See supra* subsection III.A.2.b. The entries have "fairly definite information" that Buck was working on Wilson's motion and reply. *See Keenan*, 983 F.2d at 473 (citation omitted).

\* \* \*

Accounting for the reductions, the lodestar is thus $190 per hour multiplied by 47.9 hours,[11] or $9,101.00.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*

Gerald J. Pappert, J.

---

[11]    That figure is comprised of 10.5 hours from September; 24.3 hours from October; 11.8 hours from November; and 1.3 hours from December. *See supra* Section III.B.2.; (Buck's Invoices at 9–11, 13–17, 19–21).